George R. Pitts (CA Bar 109827)
Birch, Horton, Bittner, & Cherot, P.C.
1100 Connecticut Ave., NW, Suite 825
Washington, D.C. 20036
(202) 659-5800
gpitts@bhb.com

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, | Case No. 4:21-cv-561-JSW |
| Plaintiffs, | **Related Cases:**<br>4:21-cv-344-JSW<br>4:21-cv-349-JSW |
| vs. | |
| DEBRA HAALAND, *et al.*, | **PROPOSED ANSWER OF SPORTSMEN'S ALLIANCE FOUNDATION, ROCKY MOUNTAIN ELK FOUNDATION, WISCONSIN BEAR HUNTERS ASSOCIATION, AND MICHIGAN BEAR HUNTERS ASSOCIATION** |
| Defendants, | |
| and | |
| SPORTSMEN'S ALLIANCE FOUNDATION, ROCKY MOUNTAIN ELK FOUNDATION, WISCONSIN BEAR HUNTERS ASSOCIATION, AND MICHIGAN BEAR HUNTERS ASSOCIATION, | |
| Applicant Defendant-Intervenors. | |

Sportsmen's Alliance Foundation ("SAF"), Rocky Mountain Elk Foundation ("RMEF"), Wisconsin Bear Hunters Association ("WBHA"), and Michigan Bear Hunters Association ("MBHA") (collectively "Applicant-Intervenors," the "Sportsmen Conservation Coalition," or "Coalition") provide the following Answer to Natural Resources Defense Council's ("Plaintiff's") Complaint for Declaratory and Injunctive Relief (ECF 1).

1.      The allegations in Paragraph 1 are characterizations of the Complaint to which no response is required. To the extent a response is required, the allegations are denied.

2.      In response to the allegations in the first sentence of Paragraph 2, Applicant-Intervenors admit that wolves were much of their historical range United States because of an active eradication program. The remaining allegations in the first sentence of Paragraph 2 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis. In response to the allegations in the second sentence of Paragraph 2, Applicant-Intervenors admit only that gray wolves have been protected by the Endangered Species Act (ESA) since the 1970s. Applicant-Intervenors deny the remaining allegations in the second sentence of Paragraph 2. Applicant-Intervenors deny the remaining allegations in Paragraph 2, which also characterize the rule titled Endangered and Threatened Wildlife and Plants; Removal of the Gray Wolf (*Canis lupus)* From the List of Endangered and Threatened Wildlife, 85 Fed. Reg. 69,778 (Nov. 3, 2020) ("Delisting Rule"), and other, unnamed, rules, which speak for themselves and are the best evidence of their contents.

3.      The allegations in Paragraph 3 characterize the Delisting Rule and State regulatory mechanisms, which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the Delisting Rule and State regulatory mechanisms are denied.

4.      In response to the allegations in Paragraph 4, Applicant-Intervenors admit only that gray wolves are present in Washington, Oregon, and California, that a group of wolves was documented in Colorado

in 2020, and that dispersing wolves have been documented in other states outside of the core populations in the Great Lakes and Western United States. Applicant-Intervenors deny that gray wolves are not yet recovered. The remaining allegations are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis.

5.      Applicant-Intervenors deny the allegations in Paragraph 5 and aver that the end-of- year estimates of wolf presence in Pacific Northwest states are contained in the Delisting Rule.

6.      In response to the allegations in Paragraph 6, Applicant-Intervenors admit that six wolves were observed in Colorado in 2020. Applicant-Intervenors lack knowledge or information to ascertain the truth or falsity of the remaining allegations in Paragraph 6.

7.      Applicant-Intervenors lack knowledge or information sufficient to admit or deny the allegations in Paragraph 7.

8.      Applicant-Intervenors deny the allegations in Paragraph 8.

9.      Applicant-Intervenors deny the allegations in Paragraph 9, which also state legal conclusions to which no response is required.

10.      Applicant-Intervenors deny the allegations in Paragraph 10, which also state legal conclusions to which no response is required.

11.      The allegations in Paragraph 11 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

12.      The allegations in Paragraph 12 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

13.      In response to the allegations of Paragraph 13, Applicant Intervenors admit that Plaintiffs sent and Federal Defendants received the pre-suit demand letter supplied as Exhibit A to the Complaint, which speaks for itself and is the best evidence of its contents. Any allegations in Paragraph 13 contrary

---

Proposed Answer of Sportsmen Conservation Coalition, Case No. 4:21-cv-561-JSW

to the plain language, meaning, and context of the letter are denied to the extent they do not accurately characterize the letter. The allegations in the second sentence of Paragraph 13 are characterizations of the Complaint to which no response is required. To the extent a response is required, the allegations are denied.

14.     Applicant-Intervenors deny the allegations in Paragraph 14.

15.     The allegations in the first sentence of Paragraph 15 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Applicant-Intervenors admit the allegations in the second and third sentences of Paragraph 15. Applicant-Intervenors lack knowledge or information to ascertain the truth or falsity of the allegations in the fourth sentence of Paragraph 15, and therefore deny those allegations.

16.     The allegations in Paragraph 16 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. Applicant-Intervenors lack knowledge or information to ascertain the truth or falsity of the remaining allegations in Paragraph 16, and therefore deny those allegations.

17.     Applicant-Intervenors lack knowledge or information to ascertain the truth or falsity of the allegations in Paragraph 17, and therefore deny those allegations.

18.     Applicant-Intervenors lack knowledge or information to ascertain the truth or falsity of the allegations in the first, second, and third sentences of Paragraph 18, and therefore deny those allegations. Applicant-Intervenors deny the allegations in the fourth, fifth, sixth, and seventh sentences of Paragraph 18.

19.     Applicant-Intervenors lack knowledge or information to ascertain the truth or falsity of the allegations in Paragraph 19, and therefore deny those allegations.

20.    Applicant-Intervenors lack knowledge or information to ascertain the truth or falsity of the allegations in Paragraph 20, and therefore deny those allegations.

21.    Applicant-Intervenors lack knowledge or information to ascertain the truth or falsity of the allegations in Paragraph 21, and therefore deny those allegations.

22.    Applicant-Intervenors lack knowledge or information to ascertain the truth or falsity of the allegations in Paragraph 22, and therefore deny those allegations.

23.    In response to the allegations in Paragraph 23, Applicant-Intervenors admit only that DOI is an agency of the U.S. Government, that it includes FWS, and that DOI has responsibility for the administration of the ESA with regard to endangered and threatened terrestrial and freshwater plant and animal species, including the gray wolf, and certain marine species. The remaining allegations in Paragraph 23 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

24.    In response to the allegations in Paragraph 24, Applicant-Intervenors admit only that FWS is an agency of the U.S. Government, within DOI, to which the Secretary of the Interior has delegated authority to administer the ESA with regard to endangered and threatened terrestrial and freshwater plant and animal species, including the gray wolf, and certain marine species. The remaining allegations in Paragraph 24 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

25.    The allegations in Paragraph 25 characterize two court decisions, *TVA v. Hill*, 437 U.S. 153 (1978), and *Babbitt v. Sweet Home Chapter of Cmtys. for a Greater Or.*, 515 U.S. 687, 699 (1995), which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of those court decisions are denied.

26.     The allegations in Paragraph 26 characterize the ESA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the ESA are denied.

27.     The allegations in Paragraph 27 characterize the ESA and a court decision, *Crow Indian Tribe v. United States*, 965 F.3d 662, 671 (9th Cir. 2020), which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the ESA or the court decision are denied.

28.     The allegations in the first sentence of Paragraph 28 characterize the ESA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the ESA are denied. The allegations in the second sentence of Paragraph 28 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

29.     The allegations in the first sentence of Paragraph 29 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. The allegations in the second sentence of Paragraph 29 characterize the ESA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the ESA are denied.

30.     The allegations in Paragraph 30 characterize FWS's Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act, 61 Fed. Reg. 4,722 (Feb. 7, 1996) ("DPS Policy"), which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the DPS Policy are denied.

31.     The allegations in Paragraph 31 characterize the ESA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the ESA are denied.

32.     The allegations in Paragraph 32 characterize the ESA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the ESA are denied.

33.     The allegations in Paragraph 33 characterize FWS's Final Policy on Interpretation of the Phrase Significant Portion of Its Range in the Endangered Species Act's Definitions of Endangered Species and Threatened Species ("SPR Policy"), 79 Fed. Reg. 37,578 (July 1, 2014), and a court decision, *Center for Biological Diversity v. Zinke*, 900 F.3d 1053 (9th Cir. 2018), which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the SPR policy or the court decision are denied.

34.     The allegations in the first sentence of Paragraph 34 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. The allegations in the second and third sentences of Paragraph 34 characterize two court decisions, *Humane Soc'y v. Zinke*, 856 F.3d 585 (D.C. Cir. 2017), and *Center for Biological Diversity v. Zinke*, 900 F.3d 1053 (9th Cir. 2018), which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of those court decisions are denied.

35.     The allegations in the first sentence of Paragraph 35 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. The allegations in the second and third sentences of Paragraph 35 characterize the ESA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the ESA are denied.

36.     Applicant-Intervenors admit the allegations in Paragraph 36.

37.     Applicant-Intervenors admit the allegations in Paragraph 37.

38.     In response to the allegations in the first sentence of Paragraph 38, Applicant-Intervenors admit only that gray wolves can be a keystone species. The remaining allegations in the first sentence of Paragraph 38 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis. The allegations in the second sentence of Paragraph 38 characterize an unnamed scientific evidence, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of such evidence are denied. Applicant Intervenors admit that the reintroduction of wolves resulted in predation by wolves on elk and other ungulate populations and thus impacted those populations.

39.     The allegations in the first sentence of Paragraph 39 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis. Applicant-Intervenors deny the allegations in the second sentence of Paragraph 39 and aver that FWS's Gray Wolf Biological Report (Oct. 13, 2020) (Biological Report) defines ecotype as "[g]enetically distinct geographic varieties, populations, or races within a species, which are genotypically adapted to specific environmental conditions."

40.     Applicant-Intervenors deny the allegations in Paragraph 40 and aver that wolves in the Great Lakes prey on elk and moose in addition to white-tailed deer.

41.     The allegations in Paragraph 41 characterize FWS's Biological Report, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the Biological Report are denied.

42.     Applicant-Intervenors deny the allegations in Paragraph 42.

43.     The allegations in Paragraph 43 characterize unnamed genomic studies, which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the genomic studies are denied.

44.     In response to the allegations in the first sentence of Paragraph 44, Applicant-Intervenors admit only that the Teanaway pack is located in the Northern Cascades in Washington, and the Rogue pack is located in interior southern Oregon. The remaining allegations in the first sentence of Paragraph 44 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis. In response to the allegations in the second sentence of Paragraph 44, Applicant-Intervenors admit that there are wolves in California descended from the Rogue pack in Oregon. The remaining allegations in the second sentence of Paragraph 44 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis.

45.     The allegations in Paragraph 45 characterize FWS's Biological Report, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the Biological Report are denied.

46.     Applicant-Intervenors deny the allegations of Paragraph 46.

47.     Applicant-Intervenors admit the allegations in the first sentence of Paragraph 47. In response to the allegations in the second sentence of Paragraph 47, Applicant-Intervenors admit only that the U.S. Congress passed a wolf bounty that covered the Northwest Territories in 1817, and several states subsequently adopted wolf bounties. The remaining allegations in the second sentence of Paragraph 47 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis.

48.     The allegations in the first sentence of Paragraph 48 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis. Applicant-Intervenors deny the allegations in the second sentence of Paragraph 48, and aver that gray wolf populations were essentially eliminated from the western United States by the 1930's, but there was some evidence of wolf

occupancy in the Cascade Mountains of Oregon and in the remote parts of central Idaho into the 1940's. Applicant-Intervenors admit the allegations in the third sentence of Paragraph 48 are generally correct.

49.      Applicant-Intervenors admit the allegations in the first sentence of Paragraph 49. The allegations in the second sentence of Paragraph 49 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis. The allegations in the third sentence of Paragraph 49 characterize FWS's Biological Report, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the Biological Report are denied. The allegations in footnote 1 are characterizations of the Complaint to which no response is required. To the extent a response is required, the allegations are denied.

50.      The allegations in Paragraph 50 characterize the Delisting Rule and regulations implementing the ESA, which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the Delisting Rule and the regulations are denied.

51.      Applicant-Intervenors admit the allegations in the first sentence of Paragraph 51. The allegations in the second, third, and fourth sentences of Paragraph 51 characterize Federal Register notices published at 32 Fed. Reg. 4,001 (Mar. 11, 1967), 38 Fed. Reg. 14,678 (June 4, 1973), and 39 Fed. Reg. 1,158 (Jan. 4, 1974), which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the Federal Register notices are denied.

52.      The allegations in Paragraph 52 characterize FWS's Reclassification of the Gray Wolf in the United States and Mexico, With Determination of Critical Habitat in Michigan and Minnesota, 43 Fed. Reg. 9,607 (Mar. 9, 1978), which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the final rule are denied.

53.     The allegations in the first sentence of Paragraph 53 characterize 43 Fed. Reg. 9,607 (Mar. 9, 1978), which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the March 9, 1978 final rule are denied. The remaining allegations in the first sentence of Paragraph 53 characterize FWS's Recovery Plan for Eastern Timber Wolf (eastern gray wolf), Recovery Plan for Northern Rocky Mountain Gray Wolf, and Recovery Plan for Mexican Gray Wolf (*C. l. baileyi*), which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the recovery plans are denied. Applicant-Intervenors admit the allegations in the second, third, and fourth sentences of Paragraph 53. The allegations in the fifth sentence of Paragraph 53 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis.

54.     Applicant-Intervenors admit the allegations in the first sentence of Paragraph 54. Applicant-Intervenors admit that there were approximately 4,200 wolves in the Great Lakes at the time the Delisting Rule was published, and aver that the Delisting Rule contained available population estimates at that time. Applicant-Intervenors admit the allegations in the third sentence of Paragraph 54 and deny the remaining allegations in Paragraph 54.

55.     The allegations in Paragraph 55 characterize the Delisting Rule and other, unnamed rules, which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the rules are denied.

56.     The allegations in Paragraph 56 characterize court decisions, *Defenders of Wildlife v. Norton*, 354 F. Supp. 2d 1156 (D. Or. 2005), *Nat'l Wildlife Fed'n v. Norton*, 386 F. Supp. 2d 553 (D. Vt. 2005), *Humane Soc'y of the U.S. v. Kempthorne*, 579 F. Supp. 2d 7 (D.D.C. 2008), *Defenders of Wildlife v. Hall*, 565 F. Supp. 2d 1160 (D. Mont. 2008), *Defenders of Wildlife v. Salazar*, 729 F. Supp. 2d 1207 (D. Mont. 2010), and *Humane Soc'y of the U.S. v. Zinke*, 865 F.3d 585 (D.C. Cir. 2017), which speak for

---

Proposed Answer of Sportsmen Conservation Coalition, Case No. 4:21-cv-561-JSW

themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of those court decisions are denied.

57.　　The allegations in the first sentence of Paragraph 57 characterize congressional actions, Department of Defense and Full-Year Continuing Appropriations Act, Public Law 112- 10 (2011), and a court decision, *All. for the Wild Rockies v. Salazar*, 672 F.3d 1170 (9th Cir. 2012), which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the Act and that court decision are denied. The allegations in the second sentence of Paragraph 57 characterize FWS's final rule titled Removal of the Gray Wolf in Wyoming From the Federal List of Endangered and Threatened Wildlife and Removal of the Wyoming Wolf Population's Status as an Experimental Population, 77 Fed. Reg. 55,530 (Sept. 10, 2012), and *Defenders of Wildlife v. Zinke*, 849 F.3d 1077 (D.C. Cir. 2017), which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the September 10, 2012 final rule and that court decision are denied.

58.　　The allegations in the first and second sentences of Paragraph 58 characterize FWS's Proposed Rule Removing the Gray Wolf (*Canis lupus*) From the List of Endangered and Threatened Wildlife and Maintaining Protections for the Mexican Wolf (*Canis lupus baileyi*) by Listing It as Endangered, 78 Fed. Reg. 35,663 (June 13, 2013), which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the June 13, 2013 rule are denied. Applicant-Intervenors deny the allegations in the third sentence of Paragraph 58.

59.　　The allegations in Paragraph 59 characterize the Delisting Rule and other congressional, judicial, and regulatory actions, which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the Delisting Rule and congressional, judicial, and regulatory actions are denied.

---

60.     The allegations in the first, second, and third sentence of Paragraph 60 characterize FWS's

Proposed Rule Removing the Gray Wolf (Canis lupus) From the List of Endangered and Threatened

Wildlife, 84 Fed. Reg. 9,648 (Mar. 15, 2019) ("Proposed Rule"), which speaks for itself and is the best

evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the

Proposed Rule are denied. In response to the allegations in the fourth sentence of Paragraph 60,

Applicant-Intervenors admit only that Plaintiffs submitted comments on the Proposed Rule on July 15,

2019. The remaining allegations in the third sentence characterize Plaintiff's comments, which speak for

themselves and are the best evidence of its contents. Any allegations contrary to the plain language,

meaning, and context of the comments are denied.

61.     The allegations in Paragraph 61 characterize the Delisting Rule, which speaks for itself and is the

best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the

Delisting Rule are denied.

62.     The allegations in the first and second sentences of Paragraph 62 characterize the Delisting Rule,

which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain

language, meaning, and context of the Delisting Rule are denied. The allegations in the third sentence of

Paragraph 62 characterize the Proposed Rule, which speaks for itself and is the best evidence of its

contents. Any allegations contrary to the plain language, meaning, and context of the Proposed Rule are

denied.

63.     The allegations in Paragraph 63 characterize the Delisting Rule, which speaks for itself and is the

best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the

Delisting Rule are denied.

64.     The allegations in Paragraph 64 characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the Delisting Rule are denied. Applicant-Intervenors deny the remaining allegations in Paragraph 64.

65.     The allegations in the first and second sentences of Paragraph 65 characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the Delisting Rule are denied. The allegations in the third sentence of Paragraph 65 characterize the Proposed Rule and the Delisting Rule, which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the Proposed Rule and Delisting Rule are denied. The remaining allegations in the third sentence of Paragraph 65 state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. In response to the allegations in the fourth sentence of Paragraph 65, Applicant-Intervenors admit only that on May 5, 2011, FWS published a Proposed Rule To Revise the List of Endangered and Threatened Wildlife for the Gray Wolf, 76 FR 26086 (May 5, 2011), which, among other things, initiated a status review for gray wolves in the Pacific Northwest. To the extent the allegations in the fourth sentence of Paragraph 65 characterize the May 5, 2011 proposed rule, it speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the May 5, 2011 proposed rule are denied.

66.     The allegations in Paragraph 66 characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the Delisting Rule are denied.

67.     The allegations in the first sentence of Paragraph 67 characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the Delisting Rule are denied. The allegations in the second sentence of

Paragraph 67 characterize a court decision, *Nat'l Wildlife Fed'n v. Norton*, 386 F. Supp. 2d 553 (D. Vt. 2005), which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of that court decision are denied.

68.     The allegations in Paragraph 68 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis.

69.     The allegations in Paragraph 69 characterize a state law provision, Wis. Stat. § 29.185, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of that state law are denied.

70.     The allegations in the first sentence of Paragraph 70 characterize a state law provision, Minn. Stat. § 97B.645, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of that state law are denied. Applicant-Intervenors lack knowledge or information to ascertain the truth or falsity of the allegations in the second sentence of Paragraph 70, and therefore deny the allegations. The allegations in the third sentence of Paragraph 70 characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the Delisting Rule are denied.

71.     The allegations in Paragraph 71 characterize the Delisting Rule and Michigan comments, which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the Delisting Rule and comments are denied.

72.     Applicant-Intervenors admit the allegations in the first sentence of Paragraph 72. F Applicant-Intervenors admit the allegations in the second sentence of Paragraph 72 and aver that, between 2012 and 2014, state harvest totals were 923 in Minnesota, 528 in Wisconsin, and 22 in Michigan. The allegations in the third sentence of Paragraph 72 characterize a court decision, *Humane Soc'y of the U.S. v. Jewell*, 76 F. Supp. 3d 69 (D.D.C. 2014), which speaks for itself and is the best evidence of its

---

contents. Any allegations contrary to the plain language, meaning, and context of that court decision are denied.

73.     The allegations in the first and fifth sentences of Paragraph 73 characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the Delisting Rule are denied. Applicant-Intervenors deny the allegations in the second sentence of Paragraph 73. The allegations in the third sentence of Paragraph 73 characterize congressional actions, Department of Defense and Full-Year Continuing Appropriations Act, Public Law 112-10 (2011), and a court decision, *All. for the Wild Rockies v. Salazar*, 672 F.3d 1170 (9th Cir. 2012), which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the Act and that court decision are denied. The allegations in the fourth sentence of Paragraph 73 characterize a court decision, *Defenders of Wildlife v. Salazar*, 729 F. Supp. 2d 1207 (D. Mont. 2010), which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of that court decision are denied.

74.     The allegations in Paragraph 74 characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the Delisting Rule are denied.

75.     Applicant-Intervenors deny the allegations in Paragraph 75, which also characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents.

76.     Applicant-Intervenors deny the allegations in the first and fourth sentences of Paragraph 76. Applicant-Intervenors admit the allegations in the second sentence of Paragraph 76. The allegations in the third sentence of Paragraph 76 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis.

Proposed Answer of Sportsmen Conservation Coalition, Case No. 4:21-cv-561-JSW

77.     Applicant-Intervenors admit the allegations in the first sentence of Paragraph 77. In response to the allegations in the second sentence of Paragraph 77, Applicant-Intervenors admit that at the end of 2019 there were 26 known wolf packs in Washington, with five packs in western Washington where wolves were federally listed prior to the Delisting Rule. Applicant-Intervenors deny the remaining allegations in the second sentence of Paragraph 77.

78.     Applicant-Intervenors admit the allegations in the first and second sentences of Paragraph 78. In response to the allegations in the third sentence of Paragraph 78, Applicant-Intervenors deny that the 2019 wolf count documented 17 wolves, and aver that 27 wolves were documented. Applicant-Intervenors admit the remaining allegations in the third sentence of Paragraph 78. Applicant-Intervenors admit the allegations in the fourth sentence of Paragraph 78. Applicant-Intervenors lack knowledge or information to ascertain the truth or falsity of the allegations in the fifth and sixth sentences of Paragraph 78, and therefore deny those allegations.

79.     Applicant-Intervenors lack the knowledge or information to ascertain the truth or falsity of the allegations in the first sentence of Paragraph 79 and therefore deny those allegations. In response to the allegations in the second sentence of Paragraph 79, Applicant-Intervenors admit only that the Shasta pack was identified as the first known contemporary breeding pack in California in 2015 and deny the remaining allegations. Applicant-Intervenors lack knowledge or information to ascertain the truth or falsity of the allegations in the third sentence of Paragraph 79, and therefore deny those allegations. Applicant-Intervenors admit the allegations in the fourth sentence of Paragraph 79. In response to the allegations in the fifth sentence of Paragraph 79, Applicant-Intervenors deny that there were a minimum of 17 wolves in the Lassen Pack as of last summer, and aver that there were 14 documented wolves in the pack last summer. Applicant-Intervenors admit the remaining allegations in the fifth sentence of

Paragraph 79. Applicant-Intervenors admit the allegations in the sixth and seventh sentences of Paragraph 79.

80.     The allegations in Paragraph 80 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis.

81.     Applicant-Intervenors deny the allegations in Paragraph 81, which also characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents.

82.     The allegations in the first sentence of Paragraph 82 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis. Applicant-Intervenors to ascertain the truth or falsity of the allegations in the second sentence of Paragraph 82 and therefore deny the allegations. Applicant-Intervenors admit the allegations in the third and fourth sentences of Paragraph 82. Applicant-Intervenors lack knowledge or information to ascertain the truth or falsity of the allegations in the fifth sentence of Paragraph 82, and therefore deny the allegations.

83.     Applicant-Intervenors admit the allegations in the first sentence of Paragraph 83. Applicant-Intervenors lack knowledge or information to ascertain the truth or falsity of the allegations in the second sentence of Paragraph 83, and therefore deny the allegations.

84.     Applicant-Intervenors deny the allegations in Paragraph 84, which also characterize a state law provision, Utah Code § 23-29-201, which speaks for itself and is the best evidence of its contents.

85.     The allegations in the first and third sentences of Paragraph 85 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis. Applicant-Intervenors admit the allegations in the second sentence of Paragraph 85.

86.     The allegations of Paragraph 86 are denied.

87.     Applicant-Intervenors deny the allegations in the first, second, and third sentences of Paragraph 87. The allegations in the fourth sentence of Paragraph 87 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis.

88.     Applicant-Intervenors admit the allegations in the first sentence of Paragraph 88. In response to the allegations in the second sentence of Paragraph 88, Applicant-Intervenors admit that the Delisting Rule has not been rescinded. The remaining allegations in the second sentence of Paragraph 88 are too vague and ambiguous to permit a response, and Applicant-Intervenors deny the allegations on that basis.

89.     Applicant-Intervenors deny the allegations in Paragraph 89, which also characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents.

90.     Answering Paragraph 90 if the Complaint, Applicant-Intervenors incorporate by reference their responses to Paragraphs 1 through 89 thereof.

91.     The allegations in Paragraph 91 characterize the ESA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the ESA are denied.

92.     The allegations in the first sentence of Paragraph 92 characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the Delisting Rule are denied. Applicant-Intervenors deny the allegations in the second sentence of Paragraph 92, which also characterize the ESA, which speaks for itself and is the best evidence of its contents. The allegations in the third sentence of Paragraph 92 characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the Delisting Rule are denied.

93.     Applicant-Intervenors deny the allegations in Paragraph 93, which also characterize a court decision, *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), which speaks for itself and is the best evidence of its contents.

94.     The allegations in the first sentence of Paragraph 94 characterizes the Delisting Rule, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the Delisting Rule are denied. Applicant-Intervenors deny the allegations in the second sentence of Paragraph 94, which also characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents. Applicant-Intervenors deny the allegations in the third sentence of Paragraph 94, which also characterize unnamed genomic studies and peer reviews, which speak for themselves and are the best evidence of their contents.

95.     Applicant-Intervenors deny the allegations in Paragraph 95, which also characterize a court decision, *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), which speaks for itself and is the best evidence of its contents.

96.     Applicant-Intervenors deny the allegations in Paragraph 96, which also characterize two court decisions, *Defenders of Wildlife v. Norton*, 354 F. Supp. 2d 1156 (D. Or. 2005) and *Nat'l Wildlife Fed'n v. Norton*, 386 F. Supp. 2d 553 (D. Vt. 2005), which speak for themselves and are the best evidence of their contents.

97.     Applicant-Intervenors deny the allegations in Paragraph 97, which also characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents.

98.     Applicant-Intervenors deny the allegations in Paragraph 98, which also state legal conclusions to which no response is required.

99.     Answering Paragraph 99 of the Complaints, Applicant-Intervenors incorporate by reference their responses to Paragraphs 1 through 98 thereof.

100.     Applicant-Intervenors deny the allegations in Paragraph 100, which also characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the Delisting Rule are denied.

101.     Applicant-Intervenors deny the allegations in Paragraph 101, which also characterize the 2008 and 2009 Rules referenced therein, which speak for themselves and are the best evidence of their contents.

102.     Applicant-Intervenors deny the allegations in Paragraph 102, which also characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents.

103.     Applicant-Intervenors deny the allegations in Paragraph 103, which also characterize a court decision, *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015), which speaks for itself and is the best evidence of its contents.

104.     Applicant-Intervenors deny the allegations in Paragraph 104, which also characterize a court decision, *Humane Soc'y of the U.S. v. Zinke*, 865 F.3d 585 (D.C. Cir. 2017), which speaks for itself and is the best evidence of its contents.

105.     Applicant-Intervenors deny the allegations in Paragraph 105, which also state legal conclusions to which no response is required.

106.     Answering Paragraph 106 of the Complaint, Applicant-Intervenors incorporate by reference their responses to Paragraphs 1 through 105 thereof.

107.     Applicant-Intervenors deny the allegations in Paragraph 107, which also characterize the ESA and the Delisting Rule, which speak for themselves and are the best evidence of their contents.

108.     Applicant-Intervenors deny the allegations in Paragraph 108, which also characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents.

109.     Applicant-Intervenors deny the allegations in Paragraph 109, which also characterize a court decision, *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983), which speaks for itself and is the best evidence of its contents.

110.     Applicant-Intervenors lack knowledge or information to ascertain the truth or falsity of the allegations in Paragraph 110, and therefore deny those allegations.

111.     Applicant-Intervenors deny the allegations in Paragraph 111, which also characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents.

112.     Applicant-Intervenors deny the allegations in Paragraph 112, which also characterize the Delisting Rule and the ESA, which speak for themselves and are the best evidence of their contents.

113.     Applicant-Intervenors deny the allegations in Paragraph 113.

114.     Applicant-Intervenors deny the allegations in Paragraph 114.

115.     Answering Paragraph 115 of the Complaint, Applicant-Intervenors incorporate by reference their responses to Paragraphs 1 through 114 thereof.

116.     Applicant-Intervenors deny the allegations in Paragraph 116, which also characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents.

117.     Applicant-Intervenors deny the allegations in Paragraph 117, which also characterizes a court decision, *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), which

speaks for itself and is the best evidence of its contents.

118.     Applicant-Intervenors deny the allegations in Paragraph 118, which also characterizes two court decisions, *Desert Survivors v. U.S. Dep't of the Interior*, 321 F. Supp. 3d 1011 (N.D. Cal. 2018), and *Defenders of Wildlife v. Norton*, 258 F. 3d 1136 (9th Cir. 2001), which speak for themselves and are the best evidence of their contents.

119.    Applicant-Intervenors deny the allegations in Paragraph 119, which also characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents.

120.    Applicant-Intervenors deny the allegations in Paragraph 120.

121.    Answering Paragraph 121 of the Complaint, Applicant-Intervenors incorporate by reference their responses to Paragraphs 1 through 120 thereof.

122.    Applicant-Intervenors deny the allegations in Paragraph 122, which also characterize the Delisting Rule and a court decision, *Crow Indian Tribe v. United States*, 965 F.3d 662, 671 (9th Cir. 2020), which speak for themselves and are the best evidence of their contents.

123.    Applicant-Intervenors deny the allegations in Paragraph 123, which also characterize FWS's Biological Report and February 27, 2008 final rule, 73 Fed. Reg. 10,513, which speak for themselves and are the best evidence of their contents.

124.    Applicant-Intervenors deny the allegations in Paragraph 124, which also characterize unnamed genomic studies and peer reviews, which speak for themselves and are the best evidence of their contents.

125.    Applicant-Intervenors deny the allegations in Paragraph 125, which also characterize two court decisions, *Center for Biological Diversity v. Zinke*, 900 F.3d 1053 (9th Cir. 2018), and *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), which speak for themselves and are the best evidence of their contents.

126.    Applicant-Intervenors deny the allegations in Paragraph 126, which also characterize the Delisting Rule and Biological Report, which speaks for themselves and are the best evidence of their contents.

127.     Applicant-Intervenors deny the allegations in Paragraph 127, which also characterize the Delisting Rule and the DPS Policy, 61 Fed. Reg. 4,722 (Feb. 7, 1996), which speaks for themselves and are the best evidence of their contents.

128.     Applicant-Intervenors deny the allegations in Paragraph 128, which also state legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

129.     Answering Paragraph 129 of the Complaint, Applicant-Intervenors incorporate by reference their responses to Paragraphs 1 through 128 thereof.

130.     Applicant-Intervenors deny the allegations in Paragraph 130, which also characterize the ESA and a court decision, *Humane Soc'y of the U.S. v. Zinke*, 865 F.3d 585 (D.C. Cir. 2017), which speak for themselves and are the best evidence of their contents.

131.     Applicant-Intervenors deny the allegations in Paragraph 131, which also characterize FWS's SPR Policy, 79 Fed. Reg. 37,578 (July 1, 2014), and two court decisions, *Cottonwood Env't Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075 (9th Cir. 2015), and *Humane Soc'y v. Zinke*, 856 F.3d 585 (D.C. Cir. 2017), which speak for themselves and are the best evidence of their contents.

132.     Applicant-Intervenors deny the allegations in Paragraph 132, which also characterize the Delisting Rule, FWS's SPR Policy, 79 Fed. Reg. 37,578 (July 1, 2014), and the Biological Report, which speak for themselves and are the best evidence of their contents.

133.     Applicant-Intervenors deny the allegations in Paragraph 133, which also characterize the Delisting Rule and a court decision, *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), which speak for themselves and are the best evidence of their contents.

134.     Applicant-Intervenors deny the allegations in Paragraph 134, which also characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents.

---

Proposed Answer of Sportsmen Conservation Coalition, Case No. 4:21-cv-561-JSW

135.    Applicant-Intervenors deny the allegations in Paragraph 135, which also characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents.

136.    Applicant-Intervenors deny the allegations in Paragraph 136.

137.    Answering Paragraph 137 of the Complaint, Applicant-Intervenors incorporate by reference their responses to Paragraphs 1 through 136 thereof.

138.    Applicant-Intervenors deny the allegations in Paragraph 138, which also state legal conclusions to which no response is required and characterize two court decisions, *Humane Soc'y of the U.S. v. Zinke*, 865 F.3d 585 (D.C. Cir. 2017), and *Center for Biological Diversity v. Zinke*, 900 F.3d 1053 (9th Cir. 2018), which speak for themselves and are the best evidence of their contents.

139.    Applicant-Intervenors deny the allegations in Paragraph 139, which also characterize FWS's SPR Policy, 79 Fed. Reg. 37,578 (July 1, 2014), which speaks for itself and is the best evidence of its contents.

140.    Applicant-Intervenors deny the allegations in Paragraph 140, which also characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents.

141.    Applicant-Intervenors deny the allegations in Paragraph 141, which also characterize a court decision, *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), which speaks for itself and is the best evidence of its contents.

142.    Applicant-Intervenors deny the allegations in Paragraph 142.

143.    Answering Paragraph 143 of the Complaint, Applicant-Intervenors incorporate by reference their responses to Paragraphs 1 through 142 thereof.

144.    Applicant-Intervenors deny the allegations in Paragraph 144, which also characterize the Delisting Rule and a court decision, *Empire Health Found. for Valley Hosp. Med. Ctr. v. Azar*, 958 F.3d 873, 882 (9th Cir. 2020), which speak for themselves and are the best evidence of their contents.

145.    Applicant-Intervenors deny the allegations in Paragraph 145, which also characterize the Delisting Rule, which speaks for itself and is the best evidence of its contents.

146.    Applicant-Intervenors deny the allegations in Paragraph 146, which also characterize a court decision, *NRDC v. EPA*, 279 F.3d 1180, 1186 (9th Cir. 2002), which speaks for itself and is the best evidence of its contents.

147.    Applicant-Intervenors deny the allegations in Paragraph 147, which also state legal conclusions to which no response is required.

148.    The remainder of Plaintiff's Complaint constitutes its request for relief, to which no response is required. To the extent a response is required, Applicant-Intervenors deny that Plaintiff is entitled to the relief requested or any relief whatsoever.

149.    Any allegation in the Complaint not expressly admitted herein is denied. Applicant-Intervenors ants deny any allegations in the Complaint, whether express or implied, or in the attachments thereto, that are not specifically admitted, denied, or qualified herein.

### AFFIRMATIVE AND OTHER DEFENSES

150.    The Plaintiffs may lack standing to bring some or all of the claims set forth in the complaint.

WHEREFORE, Applicant-Intervenors pray that the Complaint be dismissed with prejudice, and that they be awarded such other and further relief as may seem appropriate under the circumstances of this case.    Dated: May 13, 2021                          Respectfully submitted,

/s/ George R. Pitts
James H. Lister (AK Bar 1611111)[*]
George R. Pitts (CA Bar 109827)
Nicole M. Bayne (CA Bar 328392)[**]
Birch, Horton, Bittner, & Cherot, P.C.
1100 Connecticut Ave., NW, Suite 825
Washington, D.C. 20036
(202) 659-5800
jlister@dc.bhb.com

*Counsel for Applicant-Intervenors Sportsmen's Alliance Foundation, Rocky Mountain Elk Foundation, Michigan Bear Hunters Association, and Wisconsin Bear Hunters Association.*

[*] *Motion for pro-hac vice status pending*
[**] *Petition for admission pending*

Proposed Answer of Sportsmen Conservation Coalition, Case No. 4:21-cv-561-JSW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2021, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record.


/s/ George R. Pitts
George R. Pitts

---

Proposed Answer of Sportsmen Conservation Coalition, Case No. 4:21-cv-561-JSW